UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 3:13-CR-14-TAV-HBG-2 |
| | ) | | |
| RICKY LYNN BROWN, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) [Docs. 191, 193]. Yet, because defendant is not currently in Bureau of Prisons custody and because transfers to BOP facilities have stopped, the BOP has advised the government that it will not seek compassionate release on defendant's behalf. The Court agrees with the government that § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to considering the motion's substance, is accordingly satisfied. However, while the Court has considered the merits of defendant's request, it does not find that his circumstances present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). Therefore, the Court will **DENY** defendant's motion on the merits.

## I.     Background

Defendant pleaded guilty to conspiracy to distribute at least fifty (50) grams of methamphetamine in 2013 [Doc. 116]. At the time of sentencing, defendant was held

responsible for 150 grams of methamphetamine [Doc. 125 p. 2; Doc. 126 p. 2]. The Court sentenced him to sixty-one (61) months' imprisonment, followed by five (5) years' supervised release [Doc. 116]. The Court subsequently reduced defendant's custodial sentence to forty-nine (49) months' imprisonment under Guidelines Amendment 782 and 18 U.S.C. § 3582(c)(2) [Doc. 127].

Within six (6) months of beginning his supervised release term, defendant tested positive for marijuana four (4) times [Doc. 149 p. 2]. Due to these violations, the Court revoked his supervised release and sentenced him to three (3) months' imprisonment, followed by thirty-six (36) months' supervised release [Doc. 158 p. 1]. Defendant then violated the conditions of his second term of supervised release by unlawfully using a controlled substance, so the Court imposed a third sentence of imprisonment—this time four (4) months—followed by twenty-seven (27) months' supervised release [Doc. 173 p. 1]. When defendant violated his supervised release conditions yet again by illegal drug use [Doc. 189 p. 5], the Court accepted an agreed final sentence of twenty-four (24) months' imprisonment with no further supervised release [Doc. 190 p. 1].

Defendant is scheduled for release in late October 2021, and he is currently housed at the Robert A. Deyton Detention Facility in Lovejoy, Georgia, awaiting designation and transfer to a BOP facility [Doc. 191 p. 3; Doc. 192 p. 2]. Defendant states in his reply brief that the facility had reported at least one (1) positive case of COVID-19, citing the government's response brief filed May 1, 2020 [Doc. 191 p. 3; Doc. 192 p. 5–6]. The

government explains that the infected person was a staff member who worked in eight (8) of the twenty-four (24) separate housing areas in the facility before being diagnosed with COVID-19 [Doc. 192 p. 5]. All 200 individuals in those housing units were quarantined for a fourteen-day period after the officer's last shift in their respective housing areas, and the United States Marshals reported, as of the filing of the government's response on May 1, 2020, that none of those inmates has demonstrated COVID-19 symptoms [*Id.* at 6]. The parties have not provided an updated infection count.

Defendant has now moved for a modification of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 191]. He argues that the COVID-19 pandemic presents extraordinary and compelling reasons for a sentence reduction considering defendant's history of cancer and his chronic high blood pressure [Doc. 191 p. 1, 13]. The government opposes defendant's motion, contending that while defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, he has failed to present extraordinary and compelling reasons for release [Doc. 195 p. 1].[1] Defendant has replied [Doc. 193], and the matter is ripe for resolution.

---

[1] The government initially asserted that defendant had not satisfied the exhaustion requirement and argued that the requirement was jurisdictional [Doc. 192 p. 8–10], but after the Court asked the parties to submit briefs clarifying their positions in light of an intervening opinion by the Sixth Circuit, and after consulting with the Bureau of Prisons, the government revised its position [Doc. 195 p. 1]. The government continues to maintain, as it argued in its original response, that defendant has not presented "extraordinary and compelling reasons" warranting release [Doc. 192 p. 12–16, Doc. 195 p. 3].

3

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)).  The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons.  Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

(i)  extraordinary and compelling reasons warrant such a reduction; or

(ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

4

*Id.* Defendant requests relief under § 3582(c)(1)(A)(i) [Doc. 97].

## III. Analysis

### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[2] which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–3 (6th Cir. June 2, 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture—neither of which applies here. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Although defendant argues erroneously that the court may waive § 3582(c)(1)(A)'s exhaustion requirement, the government contends defendant has satisfied the statute's requirements. The parties agree that defendant is currently incarcerated at a non-BOP facility and that, as a result, he cannot presently file a request for compassionate release with the warden of a BOP facility [Doc. 193 p. 1, Doc. 195 p. 2–3]. Defendant asks the Court to waive the exhaustion requirement, arguing exhaustion is futile in this case [Doc. 191 p. 4]. But, the Court cannot waive a mandatory

_____

[2] The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

5

claim-processing rule when properly invoked, and the government properly raised the exhaustion issue by objecting on that basis in its initial response and by insisting in its recent brief that it had not waived and does not waive the issue [Doc. 192 p. 8, Doc. 195 p. 2]. *See Alam*, 2020 WL 2845694, at *3 (noting that the exception for waiver did not apply because the government timely objected to defendant's failure to exhaust). However, the government now represents that the Bureau of Prisons has "specifically advised the government" that "[b]ecause defendant is not yet at a BOP facility, and has no BOP warden to review a compassionate-release request, the Bureau of Prisons cannot meaningfully evaluate him for possible compassionate release," and thus, the BOP will not seek compassionate release on defendant's behalf [Doc. 195 p. 2–3].

The Court agrees with the government that the BOP's representation that it will not move for this defendant's compassionate release constitutes exhaustion because defendant has received a final, if informal, administrative decision, and no administrative remedies remain available to him. *See* § 571.63(b)–(c); 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Hernandez*, No. 18 Cr. 834-04, 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020) (finding that defendant had exhausted where BOP confirmed that it had denied defendant's compassionate release request and would not seek a motion on his behalf because the BOP could not assess defendant's circumstances while he remained in a private facility outside its custody), *United States v. Barringer*, No. 13-0129, 2020 WL 2557035, at *3 (D. Md. May 19, 2020) (characterizing exhaustion of the administrative process as "complete because [defendant not in BOP custody] ha[d] done all he [could] to

6

exhaust his administrative remedies"), and *United States v. Norris*, No. 7:19-cr-36-2, 2020 WL 2110640 (E.D. N.C. Apr. 30, 2020) (similarly finding that defendant could not direct his request to a BOP warden and government had not "identifie[d] any additional administrative procedures available to him"). The Court may therefore consider defendant's merits argument.

### B.    Whether Extraordinary and Compelling Reasons Justify Relief

However, while the Court has authority to consider defendant's motion on the merits, defendant fails to establish extraordinary and compelling reasons warranting the requested sentence reduction. § 3582(c)(1)(A)(i). Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples. USSG § 1B1.13. Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." USSG § 1B1.13.

7

The application notes for §1B1.13 provide additional guidance for applying the first prong of § 1B1.13's three-part test, describing four (4) categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n.1. First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.1(A). Secondly, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment. *Id.* at cmt. n.1(B). Third, certain family circumstances could provide reason to grant a sentence reduction. *Id.* at cmt. n.1(C). Fourth, the Director of the Bureau of Prisons could identify "other reasons" for relief, some "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. n.1(C)–(D).

Defendant argues that § 1B1.13 no longer constrains the Court's consideration of a compassionate release motion [Doc. 191 p. 5–8]. Rather, defendant contends, courts may make an independent finding that extraordinary and compelling circumstances meriting relief exist, either by not applying § 1B1.13 or by stepping into the role of the BOP Director and applying subdivision (D)'s so-called "catchall" provision [*Id.*]. Courts

8

disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A) because the policy statement refers only to motions by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A). USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018).

Many courts have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*, No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions . . . filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the court follows the guidance of the Sentencing Commission limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release." (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)), *United States v. York*, Nos. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (discussing the "universal" application of § 1B1.13 and noting "the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider"), *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (similar), *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. April 3, 2019) (finding no "extraordinary and compelling reasons" where defendant failed to establish "serious deterioration in physical or mental health because of the aging process" under § 1B1.13 cmt. n. (1)(B)).

9

Other courts have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that a court may consider extraordinary and compelling reasons other than those specified in § 1B1.13's application notes); *see also United States v. Maumau*, No. 2:08-cr-758, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (citing cases), and *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019) (finding that § 1B1.13 "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582").

Courts have similarly disagreed as to whether courts can craft their own combination of "other [extraordinary and compelling] reasons" under subdivision (D). *Compare United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."), *and United States v. Hickman*, No. 6:15-42, 2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020) (finding that because the catchall provision provides that "other reasons" are to be "determined by the Director of the Bureau of Prisons," the Court has no authority to find "other reasons" beyond those listed in the policy statement), *with United States v. Young*, No. 2:00-cr-2-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (describing subdivision D's reference to the

10

BOP Director as "a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act"), *and Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020) (finding that defendant presented "other reasons" for release where 69-year-old man suffered from a chronic lung disease, a serious heart condition, and liver disease, thus putting him at a high risk for contracting a severe case of COVID-19).

The Court agrees with the reasoning of those courts that have found that applying the policy statement, including subdivision D, to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary. The First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow, as defendant argues, that it changed the nature of that review. *See United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019) ("Aside from allowing prisoners to bring a motion directly, the First Step Act did not change the standards for compassionate release"); *accord United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Shields*, No. 12-cr-410-1, 2019 WL 2359231 (N.D. Cal. June 4, 2019) (noting defendant had not cited and the court had not discovered "any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments").

11

While "extraordinary and compelling reasons" as the phrase is used in § 3582(c)(1)(A)(i) is vague, the phrase's statutory context dispels the vagueness. *See Ebbers*, 432 F. Supp. 3d at 427 (noting that USSG § 1B1.13 is "helpful in defining a vague standard"). First, looking to the text adjacent to § 3582(c)(1)(A)(i), Section 3582(c)(1)(A) requires that any reduction under that provision be "consistent with applicable policy statements issued by the Sentencing Commission." Second, referencing related statutory provisions, 28 U.S.C. § 994(a)(2)(C), directs the Sentencing Commission, not the courts, to promulgate "general policy statements regarding . . . the sentencing modification provisions" in § 3582(c), and § 994(t) commands that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(a)(2)(C), (t). Notably, Congress enacted § 3582(c) and §§ 994(a)(2)(C) and (t) in the same piece of legislation, underlining that Congress intended these provisions to be read together. *See* Sentencing Reform Act of 1984, Pub. L. 98-473, §§ 212(a)(2), 217(a), 98 Stat. 1987, 1998–99, 2019, 2023 (1984); *see also Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972) (noting that the rule of in pari materia, stating that a "legislative body generally uses a particular word with a consistent meaning in a given context," applies most strongly when "statutes were enacted by the same legislative body at the same time" and noting the related rule that "individual sections of a single statute should be construed together"). And, the First Step Act's addition of the language "or upon motion of the defendant after the defendant has fully

12

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" to § 3582(c)(1)(A) does not indicate congressional intent to overturn this statutory scheme. 132 Stat. at 5239.

Reading "extraordinary and compelling reasons" in its statutory context makes clear that the use of the phrase in § 3582(c)(1)(A) reflected an intentional congressional choice to give the authority to define those reasons to the Sentencing Commission. *See Hickman*, 2020 WL 2838544, at *2–3 (reasoning that these provisions support limiting authority to identify "extraordinary and compelling reasons" to the BOP Director). Thus, when some courts construe the First Step Act's modification to § 3582(c)(1)(A) as transferring the Sentencing Commission's definitional authority to the judiciary, they do so in contravention of the plain text of related statutory provisions that Congress chose not to modify. *See United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) ("This interpretation, and it appear[s] to be an interpretation gleaned primarily from the salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision" (citing § 944(t)); *accord Ebbers*, 432 F. Supp. 3d at 427.[3] They also disobey the Supreme Court's instruction that "commentary in the

---

[3] *Accord Willis*, 382 F. Supp. 3d at 1187, and *Shields*, 2019 WL 2359231, at *4.

Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). The commentary to § 1B1.13, including subdivision D, is not clearly inconsistent with defining "extraordinary and compelling reasons in § 3582(c)(1)(A)(i),"[4] even if subdivision D might appear inconsistent with some courts' interpretations of the First Step Act's purpose. *Cf. United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (not deciding but indicating agreement that § 1B1.13 and subdivision D continue to bind courts' interpretation of "extraordinary and compelling" reasons post-First Step Act), and *United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579 at *5 (W.D. Tenn. June 9, 2020) (agreeing with courts that have found the policy statement and its application notes binding but that courts can consider "other reasons" for release). Thus, the policy statement remains authoritative, and "[i]f [it] needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the Commission, not by the

---

[4] Some courts have read subdivision D to direct courts to consider whether defendant presents reasons that fall within "other reasons" as defined by the Bureau of Prison's Program Statement 5050.49(4), which is approved by the BOP Director. *United States v. Hansen*, No. 07-cr-520, 2020 WL 1703672, at *6 (E.D.N.Y. Apr. 8, 2020); *see also United States v. Lake*, No. 5:16-76, 2019 WL 4143293, at *3 (E.D. Ky. Aug. 30, 2019). As the court in *Hansen* noted, the Program Statement expands extraordinary and compelling circumstances to cover elderly inmates without a serious medical condition who are sixty-five (65) years or older and who have served the greater of ten (10) years or seventy-five percent (75%) of their term of imprisonment, unless the inmate was age sixty (60) or older when sentenced and his current conviction is listed in the Categorization of Offenses Program Statement. 2020 WL 1703672, at *6; *see also* Federal Bureau of Prisons, Change Notice to Program Statement 5050.49, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), at *4 (Mar. 25, 2015). The Court agrees that this is a reasonable reading of subdivision D. For this reason, as well as those outlined *supra* p. 12, the Court disagrees that the policy statement is no longer "applicable" within the meaning of § 3582(c)(1)(A).

courts." *Hickman*, 2020 WL 2838544, at *3 (quoting *United States v. Lynn*, No. CR 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019)).

While plumbing legislative purpose is secondary to accurately construing the statutory text, the Court also notes that continuing to apply the policy statement, including subdivision D as written, is not inconsistent with the First Step Act's purpose of increasing the use of compassionate release. *Cf. Beck*, 425 F. Supp. 3d at 579 (describing the First Step Act as being "enacted to further increase the use of compassionate release" (citing § 603(b), 132 Stat. at 5239 (captioned "Increasing the use and transparency of compassionate release"))). As the *Hickman* court noted, "[t]he Act achieves this goal simply by granting defendants the ability to move for compassionate release on their own," and many defendants' motions "invoke the specific provisions of the policy statement rather than the catchall provision." 2020 WL 2838544, at *2 (citing *Lynn*, 2019 WL 3805349, at *2).

Because any sentence reduction must be consistent with applicable policy statements, § 3582(c)(1)(A)(ii), the fact that defendant's reasons do not fall into any of these potential categories of extraordinary and compelling circumstances justifies denying defendant's motion. § 3582(c)(1)(A)(ii).

Defendant's first and principal argument is that COVID-19 poses a serious, possibly fatal, risk because is sixty (60) years old, is immunocompromised because he twice survived cancer, and suffers from high blood pressure [Doc. 191 p. 13–14]. As the government reasons, the COVID-19 pandemic does not fit into any of § 1B1.13's

categories and thus does not provide a basis for a sentence reduction [Doc. 192 p. 13–14]. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that threatens "every non-immune person worldwide" [*Id.*].  *See* § 1B1.13 n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").[5]

On the other hand, as the government notes [Doc. 192 p. 14–15], a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19.  § 1B1.13 n.1(A)(ii); *see also* Groups at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 6, 2020) (hereinafter "Groups at Higher Risk").  A court could find that defendant's medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by

---

[5]  *See also United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (finding that defendant "failed to show that COVID-19 pose[d] a particular risk to him sufficient to constitute extraordinary and compelling circumstances" where he did not contend he suffered from a terminal illness or serious medical condition and where he had "produced no evidence indicating that the jail is not equipped to adequately address problems arising due to COVID-19"), and *United States v. Mungarro*, No. 07-2276, 2020 WL 1933816, at *2 (E.D. Mich. Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms.").

16

risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 n.1(A)(ii).

Defendant's medical conditions do not meet this standard. Defendant, who is age sixty (60), points to his history of cancer, chronic high blood pressure, ulcers, and acid reflux disease in support of compassionate release [Doc. 191 p. 3, 13]. Defendant was treated for throat cancer in 2005 and testicular and intestinal cancer in 2012, and he argues he is seriously immunocompromised [*Id.* at 3]. As the government highlights [Doc. 195 p. 4], the CDC only identifies pulmonary hypertension, not essential hypertension, from which defendant suffers [Doc. 194-2 p. 2], as increasing the risk for severe COVID-19 infection. *See* Groups at Higher Risk. And, although the CDC states that surviving cancer, specifically undergoing chemotherapy, may weaken the immune system, defendant states that his last treatment for cancer was in 2012, and he has not demonstrated that he is currently immunocompromised. *See* If You Are Immunocompromised, Protect Yourself from COVID-19, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html.

Moreover, defendant has not alleged that these conditions are being ineffectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks. *Id.* Indeed, the most recent medical report for defendant provided to the Court indicates that defendant has been consistently taking his hypertension medications, that his prescriptions were refilled in December 2019, and that he was scheduled for a follow-up visit in March of this year [Doc. 194-2 p. 1, 5].

17

And, defendant has not alleged or demonstrated that his facility would be unable to treat him if he contracted COVID-19. Rather, he makes general allegations about the dangers presented by COVID-19, cites general statistics about infections in BOP facilities, and argues that being incarcerated heightens his risk of infection because of the difficulty of social distancing, disinfecting hands, and self-quarantining in prison settings [Doc. 191 p. 3, 8–13]. But, he does not point to any specific conditions at his facility, Robert A. Deyton, that increase his infection risk, and he admits that the number of active infections at his facility appears to be low. *See supra* p. 3 (noting that only one (1) inmate is reported as actively infected as of early May). Thus, defendant has failed to establish that he suffers from a chronic medical condition whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility."[6] § 1B1.13 n.1(A); *see also United States v. Shah*,

---

[6] Defendant cites various opinions in support of granting compassionate release based on the COVID-19 threat [Doc. 191 p. 14–18]. Many of those opinions did not involve a § 3582(c)(1) motion for compassionate release and are therefore of slight persuasive value. *See, e.g.*, [Doc. 191-3, *United States v. Copeland*, No. 2:05-cr-135 (D.S.C. Mar. 24, 2020) (involving the First Step Act's modifications to penalties for crack cocaine offenses)], and *United States v. Toledo Manrique*, No. 19-mj-71055-1, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) (involving release on bail pending extradition). For instance, defendant asks the Court to pay special attention to the opinion in *United States v. Bolston*, 1:18-cr-382 (N.D. Ga. Mar. 30, 2020), because the defendant therein was released from Robert A. Deyton [Doc. 191 p. 17], but *Bolston* involved release under 18 U.S.C. §§ 3148(b)(1) and 3142(g), so the Court did not consider whether "extraordinary and compelling" reasons for release existed under § 3582(c)(1)(A)(i).

Moreover, those opinions defendant cites that did address COVID-19 in the context of compassionate release are distinguishable from this case because they generally involved defendants with more serious medical conditions, some of whose conditions justified relief under § 1B1.13 n.1(A). *See, e.g.*, *United States v. Hernandez*, No. 18-cr-20474 (S.D. Fla. Apr. 2, 2020) (granting unopposed motion for compassionate release without analysis [Doc. 42] where defendant

18

No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying motion for compassionate release where defendant was purportedly suffering from diabetes and hypertension but court found that "speculation as to whether COVID-19 will spread through Defendant's detention facility, FCI Morgantown, whether Defendant will contract COVID-19, and whether he will develop serious complications [did] not justify the extreme remedy of compassionate release" because defendant's medical conditions were "not out of the ordinary," defendant did not claim they were "fatal or untreatable," and there were no confirmed cases of COVID-19 at defendant's facility), *United States v. Phillips*, No. 12-20372, 2020 WL 3071849, at *4 (E.D. Mich. June 10, 2020) (finding that "50-year-old man in fairly good health" with diabetes and hypertension "managed with prescription medications" did not present extraordinary and compelling reasons for release and noting that defendant's fear of contracting COVID-19 at FCI Loretto was speculative where there were no confirmed cases at the facility), and *United States v.*

---

was diagnosed with breast cancer in January 2019 and received chemotherapy and radiation, including a radiation treatment one month before her motion [Doc. 41]), *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) (finding that defendant satisfied § 1B1.13 n.1(A)(ii) and n.1(D) and noting with respect to the latter that defendant had weeks left on his sentence, was in weakened health due to recent reconstructive surgeries on his face and "persistent pain and vision complications," and was facing the COVID-19 threat), *United States v. Rodriguez*, No. 2:03-cr-271-1, 2020 WL 1627331, at *7–8 (E.D. Pa. Apr. 1, 2020) (finding extraordinary and compelling reasons where physician had reviewed defendant's medical records and found him to be in the "higher risk category" for developing more serious disease due to his Type 2 diabetes mellitus with diabetic neuropathy that caused immunosuppression, essential hypertension, obesity, and "abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease"), and *United States v. Williams*, No. 3:04-cr-95, 2020 WL 1751545, at *3 (finding extraordinary and compelling circumstances under § 1B1.13 n.1(A) where defendant's diagnoses included severe coronary and peripheral vascular disease, congestive heart failure, left ventricular dysfunction, end-stage renal disease, hyperlipidemia, and prediabetes).

*Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4–5 (D. Conn. Apr. 23, 2020) (finding no extraordinary or compelling reasons where defendant suffering from diabetes did not claim or provide evidence that his diabetes was not being and could not be controlled by medication and where defendant had not demonstrated that BOP could not contain the spread of the virus at his facility or treat defendant if infected).

Even if the Court could recognize some combination of extraordinary and compelling reasons that fall outside those specified by the policy statement, which the text of the Guidelines does not currently authorize it to do, § 1B1.13 cmt. n.1(D), the reasons defendant cites are not extraordinary and compelling. He does not suffer from a chronic condition that could increase his risk of serious infection according to the CDC, and his medical conditions are being managed with medication and have not advanced to a life-threatening stage. Additionally, defendant is only sixty (60) years old and has a significant portion of his sentence left to serve, distinguishing his case from those where defendants were also at risk of infection due to their age and where defendants were set to be released in a few days or weeks. Moreover, defendant has demonstrated neither that his risk of infection at Robert A. Deyton is significantly higher than it would be in the general population, nor that the BOP would be unable to treat him adequately if he were infected.

20

In his reply, defendant argues that the BOP's plan for containing COVID-19 is insufficient[7] and suggests that the BOP is not effectively testing inmates [Doc. 193 p. 11]. Specifically, defendant points to a judicial rebuke of FCI Elkton for failing to identify at-risk inmates and transfer them from prison to home confinement and inconsistencies between the number of quarantined inmates and the number of reported active infections at USP Atlanta; defendant argues these and other cases of apparent BOP mismanagement evidence BOP's inability to address an outbreak [*Id.* (citing *Wilson v. Williams*, No. 4:20-cv-794 (N.D. Ohio May 21, 2020)]. Yet, this defendant is not at a BOP facility, so defendant's arguments about BOP's alleged mishandling of pandemic measures are irrelevant to his motion. Defendant also argues that state and county jail facilities have reported rapid spreading of COVID-19, but again, defendant references facilities other than his own, namely Cook County Jail in Chicago and Riker's Island in New York [Doc. 193 p. 14]. It follows from the differences among prison facilities in government, private/public status, security level, physical organization, geographical location, and individual leadership that infection rates and capacity to combat infection would also differ. While the Court appreciates defendant's concerns, it cannot base its analysis on

---

[7]    BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 19, 2020) (describing conditions under which BOP has been operating, including suspension of social visits, suspension of inmate movement with limited exceptions, use of screening protocols for staff and inmates, suspension of legal visits with some exceptions that require screening, suspension of official staff travel, suspension of all staff training, with the exception of basic training for new staff, screening procedures for contractors performing essential services, suspension of volunteer visits, suspension of tours, and implementation of modified operations to maximize social distancing); *see also* A BOP COVID-19 Overview, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited May 6, 2020).

speculation about the possibility of COVID-19-spread at Robert A. Deyton or extrapolate from the BOP's handling of the disease at FCI Elkton and USP Atlanta to a non-BOP facility.

Because defendant does not present reasons for release that qualify as extraordinary and compelling under § 3582(c)(1)(A)(i), the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13. Defendant's motion for compassionate release [Doc. 191] is **DENIED**.

## IV. Conclusion

Although the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) because defendant has fully exhausted his administrative remedies, it will deny the motion because defendant has not presented extraordinary and compelling reasons for release. Accordingly, defendant's motion for compassionate release [Doc. 191] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE